```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────
WILLIAM CHUE,

                Petitioner,           04 Civ. 8668 (JGK)
                                      94 Cr.  626 (RLC)
        - against -

UNITED STATES OF AMERICA,             MEMORANDUM OPINION AND
                                              ORDER
                Respondent.
──────────────────────────────────────
JOHN G. KOELTL, District Judge
```

Pro se petitioner William Chue filed this application for a certificate of appealability from the denial of his petition, filed pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence.

I.

On May 23, 1995, the petitioner pleaded guilty to a superseding information that contained one count of participating in the affairs of a racketeering organization, in violation of 18 U.S.C. § 1962(c) ("Count One"), and one count of using and carrying firearms during and in relation to the racketeering offenses charged in Count One, in violation of 18 U.S.C. § 924(c) ("Count Two").  Chue v. United States, Nos. 04 Civ. 8668, 94 Cr. 626, 2010 WL 2633861, at *1 (S.D.N.Y. June 29, 2010).  Count One charged various racketeering acts, including a conspiracy to murder Irving Wong in violation of New York Penal Law §§ 105.15 and 125.25 ("Racketeering Act One"), and

conspiracy to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin and thereby violate the narcotics laws of the United States, to wit, 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A), in violation of 21 U.S.C. § 846 ("Racketeering Act Eight"). (Superseding Information at 4, 6, United States v. Chue, No. 94 Cr. 626 (S.D.N.Y. May 27, 1999), ECF No. 308.)

On May 7, 2003, Judge Robert Carter of this Court sentenced the petitioner to 220 months' imprisonment on Count One and a consecutive term of 60 months' imprisonment on Count Two, totaling 280 months. Chue, 2010 WL 2633861, at *1. A three-year term of supervised release and a $100 special assessment were imposed. Id. The conviction was affirmed on appeal. United States v. Chue, 85 F. App'x 799 (2d Cir. 2004) (summary order).

On November 3, 2004, the petitioner filed a § 2255 petition. Chue, 2010 WL 2633861, at *1. The petitioner argued, among other grounds, that his trial counsel had provided ineffective assistance of counsel by, among other alleged errors, failing to raise a Sixth Amendment challenge to judicial fact-finding involved in calculating the petitioner's offense level under the Federal Sentencing Guidelines. Id.

Judge Carter denied the § 2255 petition on June 29, 2010, rejecting the petitioner's ineffective assistance of counsel

2

claim.  Id. at *1-3.  Judge Carter found that because the petitioner's sentence "was within the applicable statutory maximum, it was not outside the wide range of competent performance for [the petitioner's] attorney to have failed to invoke Apprendi."  Id. at *2.  The petitioner filed a timely application for a certificate of appealability.  The case was subsequently transferred to this Court after Judge Carter died but before a decision on the certificate of appealability had been rendered.

**II.**

The petitioner first argues that his trial counsel provided ineffective assistance of counsel by failing to challenge judicial findings of fact underlying the calculation of the petitioner's sentence pursuant to the Federal Sentencing Guidelines.

To establish a claim of ineffective assistance of counsel, the petitioner must show that (1) the petitioner's counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) counsel's deficient performance was prejudicial to the petitioner's case.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

3

The petitioner argues that his trial counsel was ineffective for failing to invoke Apprendi v. New Jersey, 530 U.S. 466 (2000),[1] which held that any fact, other than the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 490.  Specifically, the petitioner argues that the trial court engaged in impermissible judicial fact-finding when it calculated the petitioner's Guideline sentence for Racketeering Act One of Count One — namely, conspiracy to murder Irving Wong — based on a finding that the conspiracy had resulted in the actual death of the victim, thus resulting in a higher offense level under the Guidelines and exposing the petitioner to a possible sentence of life imprisonment for Racketeering Act One.  The petitioner claims that the statutory maximum for Racketeering Act One of Count One was only twenty-five years and that Apprendi was violated when he was exposed to the possibility of a higher sentence of life imprisonment for this racketeering

---

[1] In his § 2255 petition, the petitioner also argued that his trial counsel was ineffective for failing to raise Sixth Amendment challenges under Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005).  The petitioner does not renew these challenges in his application for a certificate of appealability.  In any event, as Judge Carter concluded, Blakely and Booker were decided after the petitioner's sentence was imposed and therefore it was not deficient performance for petitioner's counsel to have failed to anticipate their holdings.  See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("Counsel is not required to forecast changes in the governing law."); Bretan v. United States, Nos. 05 Civ. 916, 03 Cr. 358, 2006 WL 238994, at *6 (S.D.N.Y. Jan. 31, 2006) (noting that "the prevailing view among district courts in this Circuit is that the failure to anticipate Blakely and Booker . . . did not constitute ineffective assistance of counsel"), aff'd, 282 F. App'x 932 (2d Cir. 2008) (summary order).

4

act.  There is no merit in the petitioner's claim that the trial judge engaged in impermissible judicial fact-finding in violation of Apprendi, and there is no merit to the claim that his counsel was ineffective in not raising such a claim.

There is no evidence that Judge Carter calculated the statutory maximum based on Racketeering Act One, rather than Racketeering Act Eight, which did trigger a statutory maximum of life imprisonment for Count One.  The statutory maximum for a violation of 18 U.S.C. § 1962(c) is life imprisonment when one of the predicate felonies carries a maximum term of life imprisonment.  See 18 U.S.C. § 1963(a).  The petitioner faced a maximum statutory penalty of life imprisonment because Racketeering Act Eight, the conspiracy to violate the narcotics laws involving one kilogram of heroin, was punishable by life imprisonment.  See 21 U.S.C. §§ 841(b)(1)(A), 846.  The petitioner was appropriately advised at his guilty plea and in the Pre-Sentence Report ("PSR") that the maximum penalty was life imprisonment.  (See Plea Hr'g Tr. ("Plea Tr."), 6, May 23, 1995); PSR ¶ 157.)  In his plea allocution, the petitioner specifically admitted "from 1988 to 1994, I and other members of the Flying Dragons received in heroin more than a kilogram." (See Plea Tr. 9.)  Therefore, the petitioner faced a maximum penalty of life imprisonment on Count One of the Superseding Information, based on the Racketeering Act Eight charge in the

5

Superseding Information and the petitioner's guilty plea.  There was no judicial fact-finding that increased the maximum penalty to which the petitioner was exposed.

There is nothing in the record to suggest that the maximum statutory penalty of life imprisonment was based on the conspiracy to murder that was charged and admitted by the petitioner in Racketeering Act One, rather than the narcotics conspiracy in Racketeering Act Eight.  Although the petitioner correctly points out that the maximum sentence under New York state law for a conspiracy to murder, which is charged in Racketeering Act One, is only twenty-five years, see N.Y. Penal Law §§ 70.00(2)(B), 105.15, 125.25, there is no evidence that Judge Carter relied on Racketeering Act One to determine the statutory maximum sentence.[2]  Moreover, because the maximum penalty for the crime of conspiracy to murder under New York state law was twenty-five years, Racketeering Act One could not have increased the statutory maximum penalty to life for the statutory RICO charge, whether or not it resulted in the murder of Wong.  Therefore, Judge Carter could not have relied on Racketeering Act One to calculate a maximum statutory sentence of life imprisonment.

---

[2] The petitioner admitted at the plea that he did conspire to murder Wong and that the conspiracy resulted in Wong's murder: "On or about September 28, 1991, Daniel Lou, Michael Lou, Eric Lee, and I agreed to the murder of Irving Wong in order to steal one unit of heroin.  I picked the place in Brooklyn and gave Irving Wong the understanding that I was to bring the client.  Later I was told Irving Wong was murdered by Danny Lou."  (Plea Tr. 8.)

6

Chue confuses the Guideline calculations with the maximum statutory penalty.  The maximum statutory penalty for the RICO charge in Count One was life imprisonment because of the narcotics conspiracy in Racketeering Act Eight.  The actual murder of Wong was not relevant to the statutory maximum for the RICO charge, which was determined by the narcotics conspiracy.  While it was irrelevant to the statutory maximum sentence to which the petitioner was subjected that the petitioner conspired to murder Wong and that the conspiracy resulted in Wong's murder, it was relevant for the purpose of calculating the petitioner's sentence under the Sentencing Guidelines.[3]  The statutory maximum sentence could not have been determined by the

---

[3] The fact that the conspiracy to murder Wong resulted in the murder of Wong did affect the Sentencing Guideline calculations.  Under the November 1, 2002 Guidelines, that were used at sentencing, a conspiracy to commit murder has a Base Offense Level of 28.  See U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2A1.5(a) (2002).  However, if a conspiracy to murder "resulted in the death of a victim," then the Guideline is the Guideline for First Degree Murder, and the Base Offense Level is 43.  See id. §§ 2A1.5(c)(1); 2A1.1(a).  While a Guideline Sentencing Range for Base Offense Level 43 is life, no matter what the criminal history category, this is only an intermediate Guideline Sentence calculation, before other adjustments such as the three level downward adjustment for acceptance of responsibility.  In any event, any final Guideline calculation would be limited by the statutory maximum penalty.  See id. § 5G1.1(a).  The petitioner admitted the facts for this Guideline Calculation at his plea.  As Judge Carter found, Apprendi does "not apply to the Federal Sentencing Guidelines enhancements, so long as the resulting sentence was within the applicable statutory maximum."  Chue, 2010 WL 2633861, at * 2 (citations omitted); see also United States v. Saez, 371 Fed. App'x 202, 205 (2d Cir. 2010) (summary order) (holding no Apprendi violation despite sentence above recommended Guidelines sentence range because "the statute under which [the defendant] was convicted prescribes a sentencing range of ten years to life imprisonment.") (citing Blakely v. Washington, 542 U.S. 296, 303 (2004) ("[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.") (emphasis omitted)).

conspiracy to murder Wong because the maximum penalty for that state claim was twenty-five years.[4]

The petitioner relies on United States v. Fields ("Fields II"), 251 F.3d 1041 (D.C. Cir. 2001), but that case offers no support for the petitioner. In Fields II, it was clear that there was reversible error because the trial court imposed a life sentence on a narcotics conspiracy count without any finding by the jury of a sufficient quantity of drugs to trigger the statutory maximum sentence of life. The trial court also imposed a life sentence on the RICO conspiracy count based on its calculation of the amount of drugs involved in the conspiracy even though that amount had not been found by the jury beyond a reasonable doubt. United States v. Fields ("Fields I"), 242 F.3d 393, 397 (D.C. Cir. 2001). These were plain errors under Apprendi. The District of Columbia Court of Appeals rejected the Government's argument that it should affirm the sentence because the trial court could have imposed a life sentence on the RICO conspiracy count based on a racketeering act which alleged armed kidnapping, which would have been sufficient to warrant a life sentence for that count. Fields

---

[4] The petitioner is also mistaken in relying on the fact that Sentencing Guideline calculations treat individual racketeering acts as separate counts for calculating the Guideline Sentencing Range for the count of conviction, namely the RICO offense. (See PSR ¶ 59.) Despite the Guideline methodology, the Court must ultimately impose a sentence on the single RICO count, and the Guideline calculations on the racketeering acts are intermediate steps. The final sentence is limited by the statutory maximum for the single RICO count. See U.S.S.G. § 5G1.1(a).

II, 251 F.3d at 1046.  The Court of Appeals rejected this argument because it could not comprehend the basis for the trial court's imposition of a life sentence on the RICO conspiracy and it would not speculate as to the basis for the sentence on that count.  Id.  On remand, the Government was free to argue to the trial court that a life sentence should be imposed on both defendants on the RICO conspiracy count premised on the defendants' convictions for armed kidnapping.  Id.

In this case, a life sentence was authorized on the RICO conspiracy count solely on Racketeering Act Eight based on the narcotics conspiracy, which the petitioner admitted in his guilty plea allocution, and not on Racketeering Act One relating to the conspiracy to murder Wong.  Unlike Fields I, where the trial court made a finding as to the quantity of drugs for sentencing, here the petitioner admitted to the complete crime that encompassed Racketeering Act Eight.  Furthermore, while in Fields II the Government unsuccessfully argued that the Court of Appeals could apply a different racketeering count than was applied by the trial court to impose a statutory life sentence, in this case there is no evidence that the court did not in-fact apply (and indeed it must have applied) Racketeering Act Eight to find a statutory maximum of life imprisonment.  The petitioner allocuted to Racketeering Act Eight.  Racketeering Act Eight carried a maximum penalty of life imprisonment.  There

9

is no basis in the record to conclude that the petitioner was subjected to a maximum penalty in excess of the statutory penalty that was authorized for the crime to which he pleaded based on facts that he admitted in his plea allocution.

Thus, the petitioner's counsel's failure to invoke <u>Apprendi</u> did not constitute ineffective assistance of counsel.  Because the petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability on this basis.

### III.

The petitioner also argues that he was improperly sentenced to a consecutive mandatory minimum sentence of five years' imprisonment for violation of 18 U.S.C. § 924(c).  The petitioner points to the "except" clause of § 924(c)(1)(A), which provides that a mandatory minimum sentence of five years imprisonment shall apply for a violation of that provision "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law . . . ."  18 U.S.C. § 924(c).  The petitioner contends that, because the violation of 21 U.S.C. § 846 charged as Racketeering Act Eight in Count One carried a longer mandatory minimum sentence of ten years, <u>see</u> 21 U.S.C. § 841(b)(1)(A), he

was exempt from the consecutive mandatory minimum sentence under § 924(c)(1)(A).

However, as the petitioner concedes, this argument was not raised in his original habeas petition. The petitioner cannot raise a new ground for relief at the stage of an application for a certificate of appealability. In any event, this argument is without merit. In Abbott v. United States, 131 S. Ct. 18, 23 (2010), the Supreme Court held that the consecutive mandatory minimum sentence of § 924(c) applies notwithstanding a defendant's receipt of "a higher mandatory minimum on a different count of conviction." The Court ruled that the "except" clause only applies when "another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum." Id. The Supreme Court's decision in Abbott thus abrogated the decisions of the Court of Appeals for the Second Circuit in Williams and Whitley, which had held that the "except" clause applies when a defendant is subject to any other provision of law that imposes a greater mandatory minimum sentence. United States v. Williams, 558 F.3d 166, 170-71 (2d Cir. 2009); United States v. Whitley, 529 F.3d 150, 153 (2d Cir. 2008); see also United States v. Tejada, 631 F.3d 614, 619 (2d Cir. 2011) (concluding that Abbott abrogated the decisions in Williams and Whitley). Because the provision of law that the petitioner identifies that imposes a greater

11

mandatory minimum sentence – namely, 21 U.S.C. § 841(b)(1)(A) – is not "directed to conduct proscribed by § 924(c)," Abbott, 131 S. Ct. at 23, the petitioner does not fall within the ambit of § 924(c)(1)(A)'s "except" clause. See Tejada, 631 F.3d at 616, 619-20 (defendant facing mandatory minimum sentences for violations of both § 841(b)(1)(A) and § 924(c)(1)(A) could not claim benefit of "except" clause).

Thus, because the petitioner has not "made a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability on this basis.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the petitioner's application for a certificate of appealability is **denied.**

SO ORDERED.

Dated: New York, New York
October 3, 2012

John G. Koeltl
United States District Judge